## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

JUDGE ROBINSON



|  |  |
|---|---|
| MEDTECH PRODUCTS INC.,<br>90 North Broadway<br>Irvington, New York 10533 | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>)<br>) |
| POWER PRODUCTS, INC.<br>d/b/a SPLINTEK,<br>3325 Wyoming Street<br>Kansas City, Missouri 64111 | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

07 CV CV 3305

JURY DEMAND

COMPLAINT FOR
INJUNCTIVE RELIEF AND
MONEY DAMAGES

RECEIVED
APR 2 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

For its Complaint for Injunctive Relief and Money Damages against Defendant POWER

PRODUCTS, INC., d/b/a SPLINTEK ("Power Products" or "Splintek"), Plaintiff MEDTECH

PRODUCTS INC. ("Medtech") states and alleges as follows:

### INTRODUCTION

1.      This is an action for unfair competition, violation of the Lanham Act by use of

false designation of origin in interstate commerce, violation of common law trademark rights,

violation of New York's Consumer Protection Act, and copyright infringement.

2.      This case involves a dental protector designed to protect the teeth and jaw from

the detrimental effects of bruxism (teeth grinding), a patented product which is sold under the

trademarks THE DOCTOR'S® NIGHTGUARD™, and that nationally generates more than ten

million dollars in annual sales for Medtech.

3.    Medtech and its predecessor-in-interest pioneered sales of over-the-counter ("OTC") dental protectors and have been selling THE DOCTOR'S® NIGHTGUARD™ brand dental protector now for more than ten years. Until recently, Medtech was the only lawful source of any such product in the over-the-counter market. Medtech has spent millions of dollars in radio and cable television advertising to build brand recognition for THE DOCTOR'S® NIGHTGUARD™.

4.    Power Products is currently marketing and selling in the over-the-counter market a dental protector for nighttime tooth grinding or bruxism that improperly utilizes Medtech's NIGHTGUARD™ mark. In introducing its competing product, Power Products is wrongfully benefiting from the commercial success of THE DOCTOR'S® NIGHTGUARD™.

5.    Power Products has not received any approval from the Food and Drug Administration to lawfully market and sell its dental protector over-the-counter. In fact, Power Products has only been authorized by the Food and Drug Administration to market and sell its competing dental protector by prescription of a licensed practitioner (dentist). A true and correct copy of the approval received by Power Products from the Food and Drug Administration is attached hereto as **Exhibit A**.

6.    Ignoring and defying the fact that its action is unlawful, Power Products is now offering a competing product which is sold over-the-counter. The Food and Drug Administration has taken note of Power Products illegal sale of dental protectors in the over-the-counter market and issued a warning letter dated January 16, 2007 to Power Products. A copy of the warning letter is attached hereto as **Exhibit B**.

7.    In introducing its illegal over-the-counter product, Power Products is using Medtech's NIGHTGUARD™ trademark and has launched a coordinated campaign to lure consumers into purchasing Power Products' dental protector in the mistaken belief that it comes from Medtech, the maker of the market-leading and well-advertised NIGHTGUARD™ dental protectors.  Furthermore, on information and belief Power Products sells its inferior dental protectors at retail price points between $39 and $99, which exceed or greatly exceed, Medtech's average retail price of $24.99.  Medtech's reputation and goodwill are being harmed as Medtech's NIGHTGUARD™ product is being confused with an inferior, yet paradoxically more expensive, product that is being sold illegally in the over-the-counter market.

8.    Power Products' confusingly labeled product, combined with Power Products' deceptive marketing, is likely to cause confusion among consumers.  By using Medtech's mark, Power Products is wrongfully benefiting from the commercial success of the NIGHTGUARD™ product and, in so doing, damaging the consumer's trust in Medtech's fully approved and patented product.

## PARTIES, JURISDICTION & VENUE

9.    Medtech is a corporation organized and existing under the laws of Delaware, with its principal place of business at 90 North Broadway, Irvington, New York 10533.

10.    Power Products (Splintek) is a corporation organized and existing under the laws of Missouri, with its principal place of business at 3325 Wyoming Street, Kansas City, Missouri 64068.

11.    This Complaint arises under 15 U.S.C. §§ 1116-18 and 1125(a); 17 U.S.C. § 101 et seq.; and the laws of the State of New York.

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121.    This Court also has subject matter jurisdiction over this claim under 28 U.S.C. § 1332(a)(1).    There is complete diversity of citizenship between the parties, as Medtech is a Delaware corporation with its principal place of business in New York, and Power Products is a Missouri corporation with its principal place of business in Missouri.    The damages alleged exceed the jurisdictional amount exclusive of costs and interest.    Moreover, this Court has supplemental and pendent jurisdiction under 28 U.S.C. § 1367 because the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate that the state and federal issues be consolidated for a single trial.

13.    Power Products (Splintek) is subject to personal jurisdiction in this Court.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).    Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Power Products is subject to personal jurisdiction in this District under New York law.

## FACTS COMMON TO ALL COUNTS

### MEDTECH IS THE MARKET LEADER FOR
### OVER-THE-COUNTER DENTAL PROTECTORS

15.    Medtech markets, distributes, and sells a dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism (teeth grinding) under Medtech's trademarks THE DOCTOR'S® NIGHTGUARD™.    Medtech markets, distributes, and sells dental protectors throughout the United States, including in the New York area.

16.    Medtech and its predecessor-in-interest, Dental Concepts LLC, have spent a considerable amount of time, money, and labor in marketing and promoting dental protector products under the NIGHTGUARD™ mark through extensive radio and television advertising campaigns. (Hereinafter, Dental Concepts and Medtech are collectively referred to as "Medtech.") As the leader in over-the-counter dental protectors, Medtech has fostered substantial consumer trust by combining high-quality products with extensive marketing and promotional activities.

17.    Medtech has used ornamentally distinctive coloring and graphics layouts on its products' packaging, hereinafter referred to as Medtech's NIGHTGUARD™ "Trade Dress," which the consuming public has come to recognize as designating high-quality dental protector products of Medtech. A true and correct copy of the packaging for Medtech's NIGHTGUARD™ dental protector is attached hereto as **Exhibit C**. The package prominently displays Medtech's mark NIGHTGUARD™ on the front cover.

18.    As the leader in over-the-counter dental protectors, Medtech has fostered substantial consumer trust by combining high-quality products with extensive marketing and promotional activities. Under the NIGHTGUARD™ mark, Medtech is distinctively identified to the public as the source of a high-quality dental protector and related products.

19.    Through its extensive advertising campaign and sales of high-quality dental protectors to the public under the NIGHTGUARD™ brand name, Medtech has successfully established the NIGHTGUARD™ mark as a widely-recognized symbol of high-quality dental protectors, and has accumulated incalculable goodwill now associated with Medtech's NIGHTGUARD™ mark.

## MEDTECH PIONEERED THE OVER-THE-COUNTER DENTAL PROTECTOR MARKET (JANUARY 1997 THROUGH THE PRESENT)

20.    Medtech began using the NIGHTGUARD™ mark in association with the marketing, distribution, and sale of dental protectors on or about January 1997.  As such, it is credited with creating the entire category of over-the-counter dental protectors and revolutionizing at-home consumer care for nighttime tooth grinding or bruxism.

21.    From January 1997, and for several years thereafter, the NIGHTGUARD™ dental protector was the only significant nighttime dental protector product on the national OTC market.   Its quality and efficacy generated significant product recognition, and the NIGHTGUARD™ mark and associated Trade Dress became firmly associated in the minds of the consuming public with the quality dental protector product marketed and sold by Medtech.

22.    Medtech originated the market by becoming the first marketer and distributor to obtain formal FDA approval for an OTC dental protective device for night time tooth grinding or bruxism on March 3, 2006.   A true and correct copy of the summary basis of approval is attached as **Exhibit D**.

23.    All previous bruxism devices had been limited to 'prescription only' sale by the FDA approval process.  Prior to the FDA approval of March 3, 2006, sales of Medtech's NIGHTGUARD™ dental protective device were made OTC with the knowledge of the FDA but without formal approval.

## MEDTECH HAS SPENT MILLIONS SUCCESSFULLY GENERATING CONSUMER RECOGNITION OF ITS NIGHTGUARD™ MARK

24.     Since use of the NIGHTGUARD™ mark and associated Trade Dress began, Medtech has used the NIGHTGUARD™ mark to market its dental protector through advertisements, on nationally syndicated radio networks and shows, and on cable television. The advertisements display the NIGHTGUARD™ mark and associated Trade Dress.

25.     In the past three years alone, Medtech has spent approximately $9,000,000 in advertising and promotion to build the NIGHTGUARD™ brand name. Those efforts include a recent cable television advertising campaign. As a result of that advertising campaign, growth in sales increased dramatically.

26.     The NIGHTGUARD™ dental protector product has enjoyed a consistently high level of commercial success. Over the past six years, Medtech has sold more than $43,000,000 of its NIGHTGUARD™ dental protector products. Notwithstanding the recent addition of numerous competitors in this category, the NIGHTGUARD™ dental protector product remains the recognized category leader.

27.     By virtue of this success, the NIGHTGUARD™ trademark has become associated exclusively with Medtech. Medtech presently owns a pending federal trademark application for its NIGHTGUARD™ mark (NIGHTGUARD, Ser. No. 77/056,556, United States Patent and Trademark Office).

28.     Subsequent to the FDA approval in the Fall of 2006, Medtech changed its Trade Dress and revised its labeling to conform to the new FDA approval. Beginning in January 2007, Medtech's television advertising featured the purple, red, and white Trade Dress and new

labeling. The packaging, however, continued to feature prominently Medtech's mark NIGHTGUARD™ on the front cover.

### POWER PRODUCTS ATTEMPTS TO ENCROACH ON THE COMMERCIAL SUCCESS OF THE DOCTOR'S® NIGHTGUARD™ WITH AN ILLEGAL OTC PRODUCT

29.     On information and belief, Power Products markets, distributes, and sells a competing product to Medtech's dental protector using the mark "NIGHTGUARD" and associated packaging throughout the country and in the New York area. On Power Products' web site, www.sleepright.com, Power Products indicates that ten stores are retailers that carry the Power Products product, including several in New York.

30.     A true and correct copy of the packaging for Power Products' competing product, (which was purchased on Long Island, New York) is attached hereto as **Exhibit E**. The Power Products package prominently displays the "NIGHTGUARD" mark on the front cover.

31.     Power Products' competing product is marketed and sold to the same consumers as Medtech's THE DOCTOR'S® NIGHTGUARD™ dental protectors, including, upon information and belief, in retail stores throughout the country, including in the New York area. The Power Products' dental protector is also available for purchase on the Internet at www.sleepright.com.

32.     The Power Products product is an adjustable, pre-formed oral appliance that includes two bite pads. It is not a full occlusion mouthpiece. The product offered by Defendant is of inferior quality when compared to THE DOCTOR'S® NIGHTGUARD™. Sales of Power

8

Products' inferior and illegal product under the Medtech's mark damages the reputation of Medtech and its superior and legally sold dental protector product.

33.     Not only will consumers be confused into purchasing Power Products' dental protector when they want Medtech's NIGHTGUARD™ dental protector, but Power Products' product will also eviscerate the goodwill Medtech has spent the last 10 years (and millions of dollars) cultivating for NIGHTGUARD™.

### POWER PRODUCTS IS DISTRIBUTING ITS DENTAL PROTECTOR OTC ILLEGALLY AND IN DEFIANCE OF A WARNING FROM THE FDA

34.     Power Products has received a Section 510(k) premarket authorization from the U.S. Food and Drug Administration for dental protectors *that are prescription use only*, and for patients **18** years of age or older. The marketing clearance issued by the FDA (K022809) only permits the Power Products product to be marketed per 21 C.F.R. 801.109, which permits sales only if the device "[i]s to be sold only to or on the prescription or other order of such practitioner [e.g. a dentist] for use in the course of his professional practice."

35.     Power Products' competing product includes "Care and Fitting Instructions," a true and correct copy of which is attached hereto as **Exhibit F**. Those instructions note certain "Cautions" as follows:

> For all TMJ concerns, please consult your health care provider who may prescribe a SleepRight Rx. Do not use for more than 12 hours in a 24 hour period. Recommended for day time or night time use, not both. Not for children under **12** years of age. If you experience jaw pain, clicking, jaw noises, tooth movement, or other symptoms, see your health care provider. Discontinue use and replace if breakage occurs.

9

36.    Only after the success of the NIGHTGUARD™ devices in the marketplace did Power Products begin to adopt Medtech's NIGHTGUARD™ trademark in a deliberate, obvious and transparent attempt to wrongfully profit from Medtech's investments in its patented and FDA approved product.  At the time Power Products received 510(k) approval K022809 for their prescription-only device it was identified as an "Oral Occlusal Appliance or Splint, not a "Night Guard."

37.    Despite mandatory limitations placed on the Power Products product by the U.S. Food and Drug Administration, the Power Products dental protector product is illegally being marketed over-the-counter and in competition with THE DOCTOR'S® NIGHTGUARD™. Selling the product over-the-counter violates the marketing clearance (K022809).  (**Ex. A**.)

38.    Selling the product over-the-counter also violates the recommendations of the U.S. Food and Drug Administration's Dental Advisory Panel that, after a full public hearing and public vote, decided to permit only full occlusion mouthpieces to be sold over-the-counter. Power Products' illegal activities demonstrate a disregard for and/or ignorance of the findings and recommendations of the U.S.F.D.A. Dental Advisory Panel.

39.    In light of Power Products' illegal conduct, the U.S. Food and Drug Administration issued a WARNING LETTER to Power Products on January 16, 2007, noting that the "Cautions" as included in the "Care and Fitting Instructions" only purported to restrict for "children under 12 years of age" and that the dental protector products were being marketed over-the-counter.  The WARNING LETTER states:

> The Food and Drug Administration (FDA) has learned that your firm is marketing the Sleep Right® Adjustable Night Guard in the United States (U.S.) for over the counter use to protect teeth from clenching and grinding, and for use by children

12 – 18 years old, without marketing clearance or approval, in violation of the Federal Food, Drug, and Cosmetic Act (the Act).

\* \* \*

A review of our records reveals that you have obtained marketing clearance (K022809) for the Right® [sic.] Adjustable Night Guard for prescription use only, and for patients 18 years of age or older. However, you have not obtained marketing approval or clearance before you began offering your product for over the counter use and for use by children 12 – 18 years old, which is a violation of the law.

(**Ex. B**.)

40.     Upon information and belief, and despite the WARNING LETTER from the Food and Drug Administration, Power Products continues to offer for sale its dental protector product for over-the-counter use, including retailers and over the Internet.

### POWER PRODUCTS HAS MISAPPROPRIATED THE NIGHTGUARD™ COPYRIGHTED "AT-HOME FITTING INSTRUCTIONS"

41.     Medtech sells the NIGHTGUARD™ dental protector with an "At-Home Fitting Instructions" insert that describes the dental protector product and how the customer should use the product. Portions of the "At-Home Fitting Instructions" are reproduced on Medtech's packaging. A true and correct copy of the "At-Home Fitting Instructions" insert and Medtech packaging is attached as **Exhibit G** hereto.

42.     Medtech owns a federal copyright registration for its packaging and "At-Home Fitting Instructions" insert, as reflected in U.S. Reg. No. TX 6-536-309, issued by the U.S. Register of Copyrights on April 23, 2007, (the "Copyright Registration"). A copy of the Copyright Registration is attached hereto as **Exhibit H**. The Copyright Registration is valid and is subsisting in full force and effect.

43.    Medtech's Copyright Registration is *prima facie* evidence of the validity of such registration, of Medtech's ownership of the copyright, and of Medtech's exclusive right to use the copyrighted material.  Moreover, Medtech's packaging and "At-Home Fitting Instructions" carry a copyright notice that is actual notice to Power Products and to all others of Medtech's ownership of the copyrighted material.

44.    Currently, Power Products' competing product is advertised on the Internet.  The *product*, as advertised on the Internet, includes certain warnings and disclaimers that are copied extensively from the warnings included in the DOCTOR'S® NIGHTGUARD™ "At-Home Fitting Instructions."  The warnings on Power Products' *web site* for the product include the following, which are copied verbatim from the DOCTOR'S® NIGHTGUARD™ "At-Home Fitting Instructions", namely:

> **Do not use** if you are under 18 years of age. If you can wiggle any of your teeth. If your dentist told you that you have TMJ. If you have any tooth or jaw pain, or pain with bruxing or tooth grinding. As an athletic mouth guard. . . . For more than three months without consulting your dentist. . . . **Ask a doctor before use if you have** loose fillings, loose caps or cavities with no fillings. Clicking of your jaw. Jaw pain, teeth pain, face pain, or have a hard time chewing. Two or more missing teeth. Mouth sores. Gum disease or bleeding gums. Serious breathing, respiratory or other health problems. **When using this product** see your dentist every six months. **Stop use and ask a dentist if** your same symptoms last even after several weeks of use. The product easily falls out of your mouth. The product causes you to gag or feels uncomfortable. You have bleeding gums, soreness, or other reaction inside your mouth. You notice new symptoms (jaw pain, teeth pain, ear pain, headache, neck stiffness, or joint clicking) because of the product. You have loose teeth or a change in your bite that lasts more than a few minutes after taking product out.

A true and correct copy of a printout or the internet page is attached as **Exhibit I**.

## POWER PRODUCTS' ACTIONS ARE
## HARMFUL TO MEDTECH

45.     Power Products, by continuing to sell its prescription only device OTC, invites

FDA regulatory action as a consequence of its offering products that are "adulterated" or

"misbranded" under the Federal Food Drug & Cosmetic Act.  By wrongfully adopting the

NIGHTGUARD™ trademark, Power Products has created the likelihood of consumer confusion

as to the party and products which may be subject to any further regulatory action.

46.     Power Products' actions in infringing upon Medtech's NIGHTGUARD™ mark

and copyrights are willful and deliberate, and have caused and will continue to cause damage and

irreparable injury to Medtech.

47.     Not only has Medtech lost sales and revenues as confused customers buy Power

Products' product when they intended to buy Medtech's product, but Power Products' conduct

will continue to damage Medtech's ability to maintain its hard-won brand recognition and

reputation in the over-the-counter dental protector category.  Further damage and irreparable

injury will result if Power Products is allowed to continue to violate Medtech's rights by

marketing an illegal and inferior product utilizing Medtech's NIGHTGUARD™ mark, especially

when that product is priced much higher than Medtech's product.  Consumers who purchase the

Power Products dental protector will likely feel deceived and cheated given the poor quality of

the product, and will be unlikely to purchase other dental protectors as a result.

48.     More importantly, Power Products' conduct will damage Medtech's ability to

maintain its brand recognition in the dental protector category.  If Power Products floods the

market with its product, it will undermine Medtech's efforts to continue to grow its brand,

maintain its reputation for high-quality products, and establish greater success. Furthermore, Medtech will be damaged as consumers are likely to confuse its dental protector with Power Products' dental protectors that are illegally being sold in the over-the-counter market. As a result, consumers may mistakenly opt to purchase dental protectors not being sold by Medtech due to this confusion caused by Power Products' illegally marketing and selling a dental protector in the over-the-counter market utilizing Medtech's NIGHTGUARD™ mark.

49.    Power Products' conduct is all the more culpable when measured against the descriptive terms used by Medtech's competitors in the dental protector category. A survey of the descriptive terms used by these competitors shows several non-infringing options available to companies that wish to enter this market, such as "nite protector," "dental protector," and "dental splint." Power Products itself previously referred to its product as an "oral occlusal appliance or splint."

50.    Power Products' deliberate and illegal acts constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); copyright infringement under 17 U.S.C. § 501; conduct in violation of the New York Act for Consumer Protection, NY CLS Gen. Bus. Section 349(h); and violations of related common-law rights. Medtech seeks temporary and permanent injunctive relief to halt Power Products' wrongful and illegal conduct and an award of compensatory and punitive damages, as well as attorneys' fees and expenses, for Power Products' willful and wanton conduct.

## COUNT I
## LANHAM ACT - UNFAIR COMPETITION/USE OF FALSE DESIGNATION IN INTERSTATE COMMERCE

51.    Medtech incorporates the allegations contained in Paragraphs 1-50 above as if fully set forth herein.

52.    Notwithstanding Medtech's well-known and prior-established rights to the NIGHTGUARD™ mark, Power Products has caused dental protector goods to enter into interstate commerce using the designation and representation "NIGHTGUARD" connected therewith.

53.    Power Products' use of the mark "NIGHTGUARD" is a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Power Products' dental protector by Medtech.

54.    Power Products' acts are in violation of 15 U.S.C. § 1125(a), in that Power Products has used in connection with goods and services a false designation of origin, a false or misleading description in order to cause mistake and to deceive as to the affiliation, connection, or association of Power Products' goods with Medtech, and as to the origin, sponsorship, and approval of Power Products' goods, services, and commercial activities by Medtech.

55.    As a result of Power Products' infringing conduct, Medtech has been injured, and likely will continue to be injured as to its goodwill and the value of its NIGHTGUARD™ mark.

56.    Power Products' infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117.

57.    Power Products' infringing conduct has damaged Medtech in an amount to be determined at trial, including lost sales, revenues, and profits.

58.    Power Products' infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Power Products' infringement.

**COUNT II**
**COPYRIGHT INFRINGEMENT**

59.    Medtech incorporates the allegations contained in Paragraphs 1-58 above as if fully set out herein.

60.    Power Products has copied substantial portions of Medtech's copyrighted material, as identified in the Copyright Registration.

61.    Power Products' conduct infringes upon and violates the exclusive rights belonging to Medtech as owner of the work identified in the Copyright Registration, including, without limitation, Medtech's rights under 17 U.S.C. § 106.

62.    Power Products has willfully engaged in, and is willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Medtech.  Power Products' infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

63.    Power Products' infringing conduct has damaged Medtech in an amount to be determined at trial.   Power Products also has realized and continues to realize profits and other

benefits belonging to Medtech. Accordingly, Medtech seeks an award of damages and costs pursuant to 17 U.S.C. §§ 504 and 505.

64.    Power Products' infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury. Medtech has no adequate remedy at law for Power Products' infringement.

### COUNT III
### COMMON LAW - UNFAIR COMPETITION

65.    Medtech incorporates the allegations contained in Paragraphs 1-64 above as if fully set out herein.

66.    By misappropriating the commercial advantage gained by Medtech in the NIGHTGUARD™ trademark and the Copyright Registration, and otherwise engaging in illegal activity, prohibited generally and specifically by the U.S.F.D.A., Power Products has competed unfairly in violation of the common law of New York, as preserved by N.Y. Gen. Bus. Law §§ 360(k) and 350.

67.    Upon information and belief, Power Products has ignored the WARNING LETTER of the Food and Drug Administration and has continued to sell its dental protector product in violation of the Federal Food, Drug, and Cosmetic Act. Power Products' illegal activities and differing product have damaged and continue to damage Medtech's NIGHTGUARD™ trademark and reputation.

68.    Power Products has acted in bad faith.

69.    Power Products' infringing actions are willful and deliberate.

17

70.    Power Products' conduct has damaged Medtech in an amount to be determined at trial.

71.    Power Products' conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Power Products' infringement.

## COUNT IV
## COMMON LAW - UNJUST ENRICHMENT

72.    Medtech incorporates the allegations contained in Paragraphs 1-71 above as if fully set out herein.

73.    Power Products has received substantial benefits and profited from its deliberate and unlawful use of Medtech's NIGHTGUARD™ trademark and its copyrighted material, but has not compensated Medtech for the benefits Power Products received.

74.    Power Products' receipt of the above benefits and profits constitutes unjust enrichment.

75.    Power Products' conduct has damaged Medtech in an amount to be determined at trial.

## COUNT V
## VIOLATION OF SECTION 349(h) NEW YORK ACT
## FOR CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES

76.    Medtech incorporates the allegations contained in Paragraphs 1-75 above as if fully set out herein.

77.     Power Products' use of Medtech's NIGHTGUARD™ trademark and its copyrighted material constitute efforts to pass off its products as products originating from Medtech.   Power Products' actions described herein are consumer-oriented and are misleading in a material way.

78.     Power Products' use of Medtech's NIGHTGUARD™ trademark and its copyrighted material causes a likelihood of consumer confusion and misunderstanding as to the source, sponsorship, approval, or association with respect to Power Products' products referenced herein.

79.     Power Products' use of Medtech's NIGHTGUARD™ trademark and its copyrighted material constitutes a deceptive trade practice in violation of N.Y. CLS Gen. Bus. § 349(h).

80.     Power Products' actions are willful and deliberate.

81.     Power Products' conduct has damaged Medtech in an amount to be determined at trial.

82.     Power Products' conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.   Medtech has no adequate remedy at law for Power Products' infringement and deceptive practices.

**JURY DEMAND**

Medtech demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Medtech respectfully requests that process issue and be served upon Defendant, and that the claims in this action be tried and an Order be entered that:

1.    Temporarily enjoins Power Products from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's trademark or copyright rights; in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods in association with Medtech's NIGHTGUARD<sup>TM</sup> mark, copyrighted materials, or any colorable variations thereof.

2.    Permanently enjoins Power Products from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's trademark or copyright rights; in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods in association with Medtechs' NIGHTGUARD<sup>TM</sup> mark, copyrighted materials, or any colorable variations thereof.

3.    Requires Power Products to recall from all distribution channels and all retail locations all products bearing Medtech's NIGHTGUARD<sup>TM</sup> mark, copyrighted material, or any colorable variations thereof, and take other affirmative steps to dispel such false impressions that heretofore have been created by its use of Medtech's NIGHTGUARD<sup>TM</sup> mark and copyrighted material.

4.    Requires Power Products to deliver up for destruction all labels, signs, prints, packages, advertisements, products, and /or other matter bearing the unauthorized reproduction or imitation of Medtech's NIGHTGUARD<sup>TM</sup> mark or copyrighted material, and all means for making such reproductions or imitations pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503.

5.    Requires Power Products to account for its profits arising from its trademark infringement, copyright infringement, unfair competition, and other illegal and deceptive acts.

6.    Awards Medtech actual damages, in an amount to be determined at trial, to the fullest extent allowed under 15 U.S.C. § 1117, 17 U.S.C. § 504, and 35 U.S.C. § 284, or, in the alternative, statutory damages pursuant to the Lanham Act and/or the Copyright Act, 17 U.S.C. § 504, in the maximum amount permitted by law.

7.    Awards Medtech treble damages for Power Products' willful and deliberate actions to the fullest extent allowed under 15 U.S.C. § 1117, 35 U.S.C. § 284, and N.Y. Gen. Bus. Law § 349(h).

8.    Awards Medtech punitive damages pursuant to the law of the State of New York for Power Products' fraudulent, intentional, and malicious conduct.

9.    Awards Medtech costs and reasonable attorneys' fees to the fullest extent provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, and 35 U.S.C. § 285.

10.    Awards Medtech prejudgment and postjudgment interest at the highest rate prescribed by law.

11.    Taxes the costs of this case against Power Products.

12.    Awards such other and further relief as this Court deems equitable and just.

**Dated: April 2⁄, 2007.**

Respectfully submitted,

ALSTON & BIRD LLP

By: _____
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387

21

(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

Of Counsel:

Todd R. David , GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.1800
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600
eramage@bakerdonelson.com

Carl M. Davis II, GA Bar Number 207710
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.1800
Six Concourse Parkway
Suite 3100
Atlanta, Georgia 30328
(678) 406-8700
cdavis@bakerdonelson.com

Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.